IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PATRICK NOVAK,<br><br>    Plaintiff,<br><br>vs.<br><br>BOARD OF TRUSTEES OF SOUTHERN ILLINOIS UNIVERSITY, SOUTHERN ILLINOIS UNIVERSITY COLLEGE OF EDUCATION, LYNN SMITH, MARLA MALLETTE, SHARON SHROCK, JANET FULLER, and PAUL ANGELIS,<br><br>    Defendants. | Case No. 12-cv-7-JPG |

**MEMORANDUM AND ORDER**

This matter comes before the Court on defendants' motion to dismiss (Doc. 10) to which plaintiff, Patrick Novak, filed a response (Doc. 15). For the following reasons, the Court grants in part and denies in part defendants' motion to dismiss (Doc. 10).

Plaintiff brings this action against the defendants pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 794. His amended complaint alleges as follows. In Spring 2005, plaintiff, who had been diagnosed and treated for Post-Traumatic Stress Disorder, was admitted to the doctoral program at defendant Southern Illinois University College of Education. The Southern Illinois University Graduate School informed plaintiff in Spring 2011 that he was "dropped" from the program. Defendants Lynn Smith, Marla Mallette, Sharon Shrock, Janet Fuller, and Paul Angelis were members of plaintiff's Ph.D. dissertation committee. Plaintiff contends that defendants were aware of his diagnosis and failed to give him the following accommodations:

> 1) retake of all assignments, tests, and measurements, where the grade and outcome did not reflect [plaintiff]'s historic performance; 2) review and

> explanation as to why grades were assigned; 3) additional time to complete, [sic] assignments, tests, and measurements; and 4) access to a tutor help [sic] [plaintiff] prepare for his preliminary examination and prospectus.

Doc. 4, p. 3. Plaintiff seeks multiple types of relief, including injunctive relief, compensatory damages, and punitive damages.

## ANALYSIS

When considering a Rule 12(b)(6) motion to dismiss, the Court must "construe [the complaint] in the light most favorable to the nonmoving party, accept well-pleaded facts as true, and draw all inferences in [the non-moving] party's favor." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). The complaint must "contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

1. **Plaintiff has Pleaded Sufficient Facts**

First, defendants allege that plaintiff's complaint fails to allege sufficient facts to state a claim for relief under the ADA. The ADA provides that

> no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. Accordingly, to state a claim for a Title II violation, a plaintiff must allege: "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefit or discrimination was by reason of his disability." *Toledo v. Sanchez*, 454 F.3d 24, 31 (1st Cir. 2006) (citing 42 USC § 12132).

Defendants compare plaintiff's complaint to a breach of contract case that the Seventh Circuit dismissed in *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599 (7th Cir. 2009). In *Bissessur*, the plaintiff alleged a breach of implied contract claim by stating as follows: "[(1) "an implied contract existed between Bissessur and [the university]; [(2)] [the university] breached the implied contract that existed between Bissessur and [the university]; and [(3)] [the university's] actions were arbitrary, capricious, and undertaken in bad faith." *Id*. at 602. The Seventh Circuit found that Bissessur failed to state a legally cognizable claim under the standards in *Twombly*, because the complaint alleged only "bare legal conclusions." *Bissessur*, 581 F.3d at 602.

Here, unlike *Bissessur*, plaintiff does more than state a threadbare recitation of an ADA claim. Plaintiff has stated he suffers from PTSD and "is disabled within the meaning of the ADA in that he suffers from a physical and mental impairment that substantially limits [his] ability to perform manual tasks and to learn." Doc. 2, p. 6. Further, plaintiff alleges that he was "dropped" from the Southern Illinois University Graduate School, defendants were aware of his diagnosis, and he "should have been given accommodations." Doc. 2., p. 2. Finally, plaintiff alleges that defendants "refused to make reasonable accommodations for [p]laintiff's disability," and that "[t]he decision to dismiss [plaintiff] was based solely on [p]laintiff's disability." Doc. 2, p. 6. Accordingly, plaintiff's complaint states "enough facts to state a claim to relief that is plausible on its face," and raises his "right to relief above the speculative level." *See Bissessur*, 581 F.3d at 602. Further, because the elements for claims arising under the Rehabilitation Act are substantially similar to the elements of an ADA claim, *Silk v. City of Chicago*, 194 F.3d 788, 798 n.7 (7th Cir. 1999), the Court finds that plaintiff has alleged facts sufficient to state a claim under both the ADA and Rehabilitation Act.

### 2. Southern Illinois University College of Education Lacks the Capacity to be Sued

Next, defendant Southern Illinois University College of Education moves to dismiss all claims against it claiming it is not a legal entity with the capacity to sue or be sued. Plaintiff does not contest this argument. As the Court in *Rittenhouse* explained with regard to the Southern Illinois University School of Law, the Southern Illinois University College of Education "does not enjoy a separate legal existence independent of the university or, rather, from the Board, and, consequently, is not amenable to suit." *Rittenhouse v. Bd. of Trs. of S. Ill. Univ.*, 628 F. Supp. 2d 887, 891 (S.D. Ill. 2008) (citing *Williams v. Univ. of Ill.*, 945 F. Supp. 163, 165 (N.D. Ill. 1996); *Ladien v. Bd. of Trs., Univ. of Ill.,* 1994 WL 395078, at *7 (N.D. Ill. 1994)). The Southern Illinois University Management Act specifically grants the Board the "power to enter into contracts, to sue and be sued[.]" 110 ILCS 520/7. Accordingly, because defendant Southern Illinois University College of Education is not a separate entity with the capacity to be sued, it is dismissed with prejudice.

### 3. Count I - Rehabilitation Act Claim

#### a. Defendants are not Immune from Plaintiff's Rehabilitation Act Claim

Defendants allege that plaintiff's claims brought under Section 504 of the Rehabilitation Act are barred under the Eleventh Amendment. By its own terms, the Eleventh Amendment bars suits against a state by citizens of another state. U.S. Const. amend. XI. However, Eleventh Amendment immunity is not applicable where "Congress has abrogated the state's immunity from suit through an unequivocal expression of its intent to do so and pursuant to a valid exercise of its power"; the state has waived immunity; or the plaintiff seeks prospective relief for an ongoing federal constitutional or statutory violation. *Marie O. v. Edgar*, 131 F.3d 610, 615 (7th Cir. 1997). Illinois has waived its Eleventh Amendment immunity for purposes of the

Rehabilitation Act as a condition for its receipt of federal funds.  *See Jaros v. Ill. Dept. of Corrs.*, 684 F.3d 667, 672 n.5 (7th Cir. 2012); *see also Stanley v. Litscher*, 213 F.3d 340, 344 (7th Cir. 2000).  Punitive damages, however, are not allowed under the Rehabilitation Act.  *Barnes v. Gorman*, 536 U.S. 181, 189 (2002).  Accordingly, the Court grants defendants' motion to dismiss with respect to punitive damages under the Rehabilitation Act.  However, the remainder of plaintiff's Rehabilitation Act claim is not barred by the Eleventh Amendment.

### b. Plaintiff Only States a Rehabilitation Act Claim Against Individual Defendants in Their Official Capacities

Defendants further allege that plaintiff's Rehabilitation Act claim fails because the Rehabilitation Act does not allow for claims against the individual defendants.  Section 504 of the Rehabilitation Act provides as follows

> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S. C. § 794(a).  "Section 504 applies to federal financial assistance recipients."  *Emerson v. Thiel Coll.*, 296 F.3d 184, 190 (3d Cir. 2002) (citing *United States Dep't of Transp. v. Paralyzed Veterans of America*, 477 U.S. 597, 605-06 (1986)).  Individual defendants, however, do not receive federal aid and thus cannot be liable under the Rehabilitation Act.  *See Emerson*, 296 F.3d at 190; *Dent v. City of Chi.*, 2003 WL 21801163, at *1 (N.D. Ill. Aug. 1, 2003) ("[T]he law is well-settled that there is no individual liability under . . . the Rehabilitation Act . . . .").  Accordingly, the Court dismisses plaintiff's Rehabilitation Act claim against individual defendants Lynn Smith, Marla Mallette, Sharon Shrock, Janet Fuller, and Paul Angelis in their individual capacities.

Under *Ex parte Young*, however, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Dep't of State Police*, 491 U.S. 58, 71 (1989). The Seventh Circuit has found that suits against individuals in their official capacity for prospective injunctive relief under the Rehabilitation Act are authorized. *Bruggeman v. Blagojevich*, 324 F.3d 906, 913 (7th Cir. 2003). Accordingly, plaintiff may maintain his claims against the aforementioned individual defendants in their official capacities.

4. Count II – ADA

Next, the Court will address plaintiff's ADA claim. Plaintiff does not specify under which Title of the ADA he brings his claim; however, the Court presumes it must be under Title II, which forbids discrimination against persons with disabilities by public services programs and activities. 42 U.S.C. § 12131-12165. Defendants argue that plaintiff's ADA claims are barred by the Eleventh Amendment and that plaintiff failed to state a claim upon which relief can be granted with regard to the individual defendants.

a. Plaintiff's ADA Claim is Not Barred by the Eleventh Amendment

Defendants first allege that plaintiff's claims brought under Title II of the ADA are barred under the Eleventh Amendment. By its own terms, the Eleventh Amendment bars suits against a state by citizens of another state. U.S. Const. amend. XI. However, Eleventh Amendment immunity is not applicable where "Congress has abrogated the state's immunity from suit through an unequivocal expression of its intent to do so and pursuant to a valid exercise of its power"; the state has waived immunity; or the plaintiff seeks prospective relief for an ongoing federal constitutional or statutory violation. *Marie O. v. Edgar*, 131 F.3d 610, 615 (7th Cir. 1997). Congress unequivocally expressed its intent to abrogate immunity under Title II of

the ADA.  42 U.S.C. § 12101(b)(4) ("A State shall not be immune under the [E]leventh [A]mendment to the Constitution of the United States for an action in Federal or State court of competent jurisdiction.").  Accordingly, the question present here is whether this was a *valid* abrogation.

"[T]he Eleventh Amendment, and the principle of state sovereignty which it embodies, are necessarily limited by the enforcement provision of § 5 of the Fourteenth Amendment." *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976).  The Fourteenth Amendment provides that

> [n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV, § 1.  Section 5 gives Congress the authority to enact "appropriate legislation" to enforce the guarantees contained in section 1.  U.S. Const. amend. XIV, § 5.  Under Section 5, Congress may enact legislation forbidding conduct that is "not itself unconstitutional," but it may not reinterpret the Fourteenth Amendment protection.  *City of Boerne v. Flores*, 521 U.S. 507, 519-20 (1997).  To ensure Congress does not redefine Fourteenth Amendment protection, the Supreme Court has found that "Section 5 legislation is valid if it exhibits 'a congruence and proportionality' between the injury to be prevented or remedied and the means adopted to that end."  *Tennessee v. Lane*, 541 U.S. 509, 520 (2004) (citing *City of Boerne*, 521 U.S. at 520); *see also Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 485 (4th Cir. 2005).

In *Lane*, the Court applied this congruence and proportionality test to Title II of the ADA, finding that Congress properly abrogated Eleventh Amendment immunity where the fundamental right of access to the courts was at issue.  *Lane*, 541 U.S. at 534-35.  Specifically, the Court examined "what rights Congress sought to enforce in enacting Title II; whether there was a

history of unconstitutional discrimination; and whether the statute was an appropriate response to this discrimination." *Doe v. Bd. Of Trs. of Univ. of Ill.* 429 F. Supp. 2d 930, 937-38 (N.D. Ill. 2006) (citing *Lane*, 541 U.S. at 522-23). First, the Court identified the right to be protected as the right to be free from irrational disability discrimination and the fundamental right of access to the courts. *Lane*, 541 U.S. at 522-23. As a fundamental right, access to the courts triggers heightened scrutiny under the Fourteenth Amendment. *Id*. Next, the Court addressed the historical question, finding that a pattern of discrimination against the disabled in gaining access to public facilities existed. *Id*. at 522-29 ("Congress enacted Title II against a backdrop of pervasive unequal treatment in the administration of state services and programs, including systematic deprivations of fundamental rights.").

Finally, the Court found that Title II was a congruent and proportional response because the fundamental constitutional right of access to the courts was at issue, and the requirements would not threaten the "fundamental nature of state programs or the state's financial health." *Doe*, 429 F. Supp. 2d at 938 (citing *Lane*, 541 U.S. at 530-34). Accordingly, the Court held Congress properly abrogated the Eleventh Amendment for the purposes of disabled individuals' fundamental constitutional right of access to the Courts. *Lane*, 541 U.S. at 534-35. *Lane*, however, specifically failed to determine "whether Title II's duty to accommodate exceeds what the Constitution requires in the class of cases that implicate only [the] prohibition on irrational discrimination," such as education. *Id*. at 1994 n.20; *see also United States v. Georgia*, 546 U.S. 151, 159 (2006) ("insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity").

Courts are split over extending *Lane* to the education arena. Education, while undoubtedly important in our society, is not a fundamental constitutional right. *Plyler v. Doe*, 457 U.S. 202, 221-23 (1982); *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35-37 (1973). The First, Third, Fourth, and Eleventh Circuits have extended *Lane* to post-graduate state universities, finding Title II of the ADA to be a congruent and proportional response. *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524 (3d Cir. 2007); *Toledo v. Sanchez*, 454 F.3d 24, 39-40 (1st Cir. 2006); *Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 488-90 (4th Cir. 2005); *Assoc. for Disabled Americans v. Fla. Int'l Univ.,* 405 F.3d 954, 959 (11th Cir. 2005). The Seventh Circuit has yet to address this issue; however, two district courts within the Seventh Circuit have declined to extend *Lane* to post-graduate education. *See Rittenhouse v. Bd. of Trs. of S. Ill. Univ.*, 628 F. Supp. 2d 887, 894-95 (S.D. Ill. 2008); *Doe v. Bd. Of Trs. of Univ. of Ill.*, 429 F. Supp. 2d 930, 937-39 (N.D. Ill. 2006).

The Third Circuit, using the analysis provided in *Lane*[1], determined that Congress did appropriately abrogate immunity under Title II with respect to post-graduate education. *Constantine*, 411 F.3d at 484-90. The court first identified the Fourteenth Amendment right to be protected, as did the Court in *Lane*, as the "prohibition on irrational disability discrimination." *Constantine*, 411 F.3d at 486 (citing *Tennessee v. Lane*, 541 U.S. 509, 520, 522 (2004)). Because disability classifications are subject only to minimal scrutiny, the court noted that states may make such classifications as long as "there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Constantine*, 411 F.3d at 486 (citing *Heller v. Doe*, 509 U.S. 312, 320 (1993)). Next, addressing the historical prong, the court noted that "[a]fter *Lane*, it is settled that Title II was enacted in response to a pattern of unconstitutional

---

[1] The *Lane* analysis included identifying "what rights Congress sought to enforce in enacting Title II; whether there was a history of unconstitutional discrimination; and whether the statute was an appropriate response to this discrimination." *Lane*, 541 U.S. at 520.

9

disability discrimination by States and nonstate government entities with respect to the provision of public services." *Constantine*, 411 F.3d at 487.

Finally, the Third Circuit provided the following analysis in determining that Title II was a congruent and proportional response to the history of disability discrimination:

> In the context of public higher education, Title II requires state colleges and universities to make reasonable accommodations for disabled students to ensure that they are able to participate in the educational program. These provisions, taken together, target precisely the sort of discrimination that the evidentiary record described and that Congress sought to address.
>
> We must also consider the limitations that Congress placed on the scope of Title II. *See* [*Nev. Dep't of Human Res. v.*] *Hibbs*, 538 U.S. [721,] 738-39 [(2003)]; *City of Boerne* [*v. Flores*], 521 U.S. [507,] 533 [(1997)]. First, Title II protects only a "qualified individual with a disability." A plaintiff must make this threshold showing before he or she can even invoke the nondiscrimination provisions of the statute. Second, although Title II forbids discrimination based on a person's disability, States remain free to limit participation in their programs or activities for other, lawful reasons. Third, the requirement that public entities make "reasonable modification[s]" to accommodate disabled citizens is limited in important respects. . . . Insofar as Title II requires States to make "reasonable" modifications to their educational programs in order to ensure that disabled citizens have access to those programs, this requirement is congruent with the constitutional imperative that States avoid irrational discrimination. *See* [*Bd. of Trs. of Univ. of Ala. v.*] *Garrett*, 531 U.S. [356,] 367 [2001].
>
> . . .
>
> Undoubtedly, Title II imposes a greater burden on the States than does the Fourteenth Amendment. *See* [*id.*] at 367 [] (noting that under Cleburne, States are "not required by the Fourteenth Amendment to make special accommodations for the disabled"). Yet Title II and its implementing regulations limit the scope of liability in important respects and thus minimize the costs of compliance with the statute. *See City of Boerne*, 521 U.S. at 534 [] (stating that congruence-and-proportionality concerns are most acute where compliance with the federal statute entails "substantial costs" that "far exceed any pattern or practice of unconstitutional conduct"). These limitations "tend to ensure Congress' means are proportionate to ends legitimate under § 5." *Id*. at 533[].

*Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 487-89 (4th Cir. 2005).

Since *Lane*, the Court has provided further guidance on this topic in *United States v. Georgia*, 546 U.S. 151 (2006). In *Georgia*, a state inmate in a wheelchair alleged he was confined to a cell 23 to 24 hours per day, was unable to turn his wheelchair around in the small cell, and he was denied adequate access to toilets and showers in violation of the ADA. *Id*. at 154-55. The Court noted that "no one doubts that § 5 grants Congress the power to 'enforce . . . the provisions' of the Amendment by creating private remedies against the States of *actual* violations of those provision." *Id*. at 158. The Court ordered the inmate to amend his complaint, and then directed the lower courts to determine:

> (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to the class of conduct is nevertheless valid.

*Id*. at 159.

Using this test, the Third Circuit concluded that Congress appropriately abrogated sovereign immunity under Title II of the ADA. *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 552-56 (3d Cir. 2007). In *Bowers*, a student with a learning disability brought an action against the National Collegiate Athletic Association and university alleging violations of the ADA and Rehabilitation Act when defendants denied him academic eligibility for college sports based on his failure to take required high school courses. *Id*. at 529-31. The court found that prong one of the *Georgia* test was met because the student made a claim that "he was denied access to a program at a public education institution because of his disability" in violation of Title II of the ADA. *Id*. at 553. Under prong two, the court found that the conduct did not violate the Fourteenth Amendment because "[t]he NCAA rule (and the universities' adoption and application of the NCAA rule) easily passes muster under rational basis review as the rule is

designed to ensure that incoming athletes can handle the rigors of college academia while engaging in intercollegiate athletics." *Id*. at 553-54. The Court found that the right at issue was "the right to be free from irrational disability discrimination," and "that Congress had clearly identified a history and pattern of disability discrimination with respect to public services." *Id*. at 554. Finally, the court found that Title II passed the congruence and proportionality test with respect to education. Specifically, the Third Circuit found

> [t]he remedy chosen by Congress in Title II in the area of public education is a narrow one: access to education. Qualified individuals with a disability may not be excluded from participating in public education on the basis of their disability. Thus, states are free to enact a myriad of laws relating to public education, including laws that may negatively impact disabled students, so long as those laws do not discriminate against students *because of* their disabilities. Congress enacted Title II against the backdrop of our regrettable national history in educating students with disabilities. . . . [O]ur national history in educating students with disabilities leaves much to be desired. In many past instances, States have made educational decisions on the basis of irrational misconceptions and stereotypes held about disabled students. . . . Given this regrettable past history, Title II is a justifiable prophylactic measure to avoid the risk of unconstitutional treatment of disabled students.

*Id*. at 555.

As previously mentioned, the Seventh Circuit has yet to weigh in on this issue. However, two district courts within the Seventh Circuit have concluded that, with respect to post-graduate education, Congress did not properly abrogate state sovereign immunity pursuant to *Tennessee v. Lane*. *See Rittenhouse v. Bd. of Trs. of S. Ill. Univ.*, 628 F. Supp. 2d 887, 894-95 (S.D. Ill. 2008); *Doe v. Bd. Of Trs. of Univ. of Ill.*, 429 F. Supp. 2d 930 (N.D. Ill. 2006). They based their decision on the fact that education is not a fundamental right, while the right addressed in *Lane*, the right of access to the courts, constituted a fundamental right. *Rittenhouse*, 628 F. Supp. 2d at 894; *Doe*, 429 F. Supp. 2d at 939.

The Court respectfully disagrees with the conclusion of its sister courts in the Southern and Northern Districts of Illinois, and finds the reasoning of the First, Third, Fourth, and Eleventh Circuits persuasive.  For that reason, this Court finds that plaintiff's claim under Title II of the ADA for money damages is not barred by the Eleventh Amendment and denies defendants' motion to dismiss in that respect.

### b. Plaintiff Only States an ADA Claim Against Individual Defendants in Their Official Capacities

Finally, defendants maintain that plaintiff fails to state an ADA claim against the individual defendants because the ADA does not allow for individual liability.  The ADA does not allow individuals to be sued for monetary damages.  *Doe*, 429 F. Supp. 2d at 940.  However, the Seventh Circuit has found that suits for prospective injunctive relief under Title II of the ADA are authorized.  *Bruggeman v. Blagojevich*, 324 F.3d 906, 913 (7th Cir. 2003).  Accordingly, the Court dismisses plaintiff's claims to the extent he brings them against the individual defendants in their individual capacities.  Plaintiff, however, may maintain his claims to the extent he brings them against the individual defendants in their official capacities.

### 5. Plaintiff's Motion to Dismiss Provides for Dismissal of Defendants Fuller and Angelis

Finally, plaintiff filed a motion to dismiss (Doc. 20) defendants Janet Fuller and Paul Angelis pursuant to Rule 41(a)(2), alleging he does not have a claim against these defendants.  Because defendants have not filed an answer, the Court construes this motion as a notice of dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).  Rule 41(a)(1)(A)(i) provides that "the plaintiff may dismiss an action without a court order by filing a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment."  Defendants have filed neither an answer nor a motion for summary judgment.  Because plaintiff

has the absolute right to dismiss these defendants, the Court hereby dismisses defendants Janet Fuller and Paul Angelis from this case.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** and **DENIES in part** defendants' motion to dismiss (Doc. 10).  Specifically, the Court

- **DISMISSES with prejudice** Southern Illinois University College of Education;

- **DISMISSES** defendants Janet Fuller and Paul Angelis in both their individual and official capacities pursuant to plaintiff's notice of dismissal (Doc. 20);

- **DISMISSES** defendants Lynn Smith, Marla Mallette, and Sharon Shrock to the extent plaintiff brings claims against them in their individual capacities; and

- **DISMISSES** plaintiff's Rehabilitation Act claim to the extent he seeks punitive damages.

Accordingly, plaintiff's ADA and Rehabilitation Act claims remain against the Board of Trustees of Southern Illinois University, and against Lynn Smith, Marla Mallette, and Sharon Shrock in their official capacities.

**IT IS SO ORDERED.**

**DATED:** October 18, 2012

s/J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
