UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

PATRICK NOVAK,

    Plaintiff,

       v.

BOARD OF TRUSTEES OF SOUTHERN
ILLINOIS UNIVERSITY, SOUTHERN
ILLINOIS UNIVERSITY COLLEGE OF
EDUCATION, LYNN SMITH, MARLA
MALLETTE, SHARON SHROCK, JANET
FULLER and PAUL ANGELIS,

    Defendants.

Case No. 12-cv-7-JPG-PMF

## MEMORANDUM AND ORDER

This matter comes before the Court on the motion for summary judgment filed by defendants Board of Trustees of Southern Illinois University ("SIU"), Lynn Smith, Marla Mallette and Sharon Shrock, sued in their official capacities (Doc. 30)   Plaintiff Patrick Novak has responded to the motion (Doc. 49), and the defendants have replied to that response (Doc. 57). Novak also objects (Doc. 64) to the decision of Magistrate Judge Philip M. Frazier to bar the expert reports used to support Novak's summary judgment response (Doc. 61), and the defendants have responded to that objection (Doc. 65).   The defendants also seek leave to supplement their motion for summary judgment and their response to Novak's objection with a citation to a recent case (Doc. 66).   Novak has not responded to that motion.

**I.**     **Summary Judgment Standard**

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000).   The reviewing court must construe the evidence in the

light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396.

The initial summary judgment burden of production is on the moving party to show the Court that there is no reason to have a trial. *Celotex*, 477 U.S. at 323; *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). Where the non-moving party carries the burden of proof at trial, the moving party may satisfy its burden of production on one of two ways. It may present evidence that affirmatively negates an essential element of the non-moving party's case, *see* Fed. R. Civ. P. 56(c)(1)(A), or it may point to an absence of evidence to support an essential element of the non-moving party's case without actually submitting any evidence, *see* Fed. R. Civ. P. 56(c)(1)(B). *Celotex*, 477 U.S. at 322-25; *Modrowski*, 712 F.3d at 1169. Where the moving party fails to meet its strict burden of proof, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 322-26; *Anderson*, 477 U.S. at 256-57; *Modrowski*, 712 F.3d at 1168. A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252.

II.     **Facts**

Construed in the plaintiff's favor, the evidence and all reasonable inference that can be drawn from it establish the following relevant facts.[1]

Novak has suffered from PTSD since around 1999. He became an undergraduate student at SIU in 2001 and notified it that he suffered from PTSD. SIU, through its office of Disability Support Services ("DSS"), provided Novak with the accommodations he requested throughout his undergraduate career. Often these accommodations were memorialized in Accommodations Agreements between Novak and DSS. Those agreements stated that Novak was responsible for notifying DSS if he needed further assistance. The defendants were aware of Novak's PTSD at

---

[1] The Court is dismayed by Novak's counsel's repeated misrepresentation of evidence in his brief in opposition to summary judgment (Doc. 49). A few representative misrepresentations are set forth below:

- On page 3 of the brief, counsel wrote, "Novak's psychologist told SIU that he should be given an opportunity to consult with an *external* instructor in taking Day Three. He was not permitted this accommodation" (emphasis added). Novak's psychologist actually recommended SIU provide Novak with "[a] *current or retired faculty member* with considerable availability to help [Novak] meet expectations for the third preliminary examination" (emphasis added). Pl.'s Resp. to M. Sum. J., Doc. 49-2, Page IDs #627 & #633. Novak confirmed in his deposition that he was given an opportunity to meet with an internal instructor to prepare for Day 3. Pl.'s Resp. to M. Sum. J., Doc. 49-1, Novak Dep. at 102, 108.

- On page 3 of the brief, counsel wrote, "Novak was give permission to retake Day Three, but he was not told why he failed . . . ." and "Novak was not told why he failed Day Three a second time." In actuality, Novak testified in his deposition:

    Q.      You were obviously permitted to retake the exam, but were you given an explanation as to why you failed day three the first time around?

    [Novak].   Yes.

    Pl.'s Resp. to M. Sum. J., Doc. 49-1, Novak Dep. at 106; *see also* Pl.'s Resp. to M. Sum. J., Doc. 49-1, Novak Dep. at 108 (same with respect to second attempt to pass Day 3).

Plaintiff's counsel is warned that further misrepresentations of this nature may result in sanctions.

3

all relevant times.  While he was a student at SIU, Novak never behaved in a way he considered threatening.

After receiving his undergraduate degree and on defendant Smith's recommendation, Novak was admitted into the Ph.D. program in the Department of Curriculum and Instruction.  In order to receive a doctoral degree, the Department Curriculum and Instruction required a student to pass a three-day Preliminary Examination ("Prelims").  Passage of Prelims was a prerequisite for allowing a student to write a doctoral dissertation which, if approved, would result in the conferring of a Ph.D.  Each day of Prelims – Day 1, Day 2 and Day 3 – represented a separate portion of the exam and was graded independently.  Days 1 and 2 were timed exams and Day 3 was an untimed take-home assignment.  Department rules permitted a student to be dropped from the Ph.D. program if he failed any two portions of the exam.

In September 2008, upon the advice of his psychologist, Novak requested and received extra time to complete Day 1 in light of his PTSD.  He passed Day 1.

In the summer of 2009, Novak took Day 2 and Day 3.  Day 3 consisted of a series of five questions to be addressed in the response.  Defendants Smith and Mallette, two of the professors serving on the committee to guide and oversee Novak's progress toward his dissertation, reviewed his Day 2 and Day 3 exam answers, determined they were insufficient and, accordingly, gave Novak failing marks.  They both offered reasons for failing Novak on Day 2 and Day 3 based on the content of his exam answers.  Novak was not terminated from the Ph.D. program at this time despite the department's rule that two failures would permit dismissal.

In the fall of 2009, again upon the request of his psychologist, Novak requested and received accommodations in light of his PTSD:  (1) an opportunity to review his failing exam results, (2) an explanation of why they were insufficient, (3) extra time to complete Day 2, (4) the

opportunity to meet with an instructor to prepare for retaking the exams, and (5) an opportunity to retake the exams. With these accommodations, Novak passed Day 2 on his second try.

In the spring of 2010, Novak completed Day 3 again with all the applicable accommodations he had requested in the fall of 2009.[2] Again, Smith and Mallette found his Day 3 answers insufficient and, accordingly, gave Novak failing marks, and again, they both offered reasons for failing Novak on Day 3 based on the content of his exam answers.

Novak was allowed to take Day 3 again in the fall of 2010 with all the applicable accommodations he had requested in the fall of 2009. He fared no better on his third attempt; both Smith and Mallette again failed him, citing the content of his response, although they approved of part of his submission – Chapter 1 – and only asked him to rewrite the other part – Chapter 2.

Novak was allowed a fourth bite at the apple in January 2011, when he once again failed Day 3 after receiving all the applicable accommodations he had earlier requested plus additional written suggestions from Mallette to help him prepare. Smith and Mallette again cited the content of his exam response in the Chapter 2 rewrite as their reasons for failing him. Defendant Shrock, another member of Novak's dissertation committee, agreed, also citing the content of Novak's responses. Shrock only reviewed Chapter 2 of Novak's response, and some of her criticisms were that Novak had omitted parts that, unbeknownst to her, he had actually included in Chapter 1.

No other students for whom Smith or Shrock was a dissertation committee member had tried and failed to pass Day 3. In their review of Novak's various Day 3 submissions, Smith, Mallette and Shrock did not all cite the same reasons for failing Novak, and those reasons varied with each successive Day 3 attempt. Following his spring 2011 failure, they met privately with

---

[2] The request for additional time was not applicable because Day 3 was an un-timed take-home exam.

each other about Novak's performance and as a group with Novak to review with him their reasons for his failure.

Following Novak's repeated failure[3] to pass Day 3, the department terminated him from the Ph.D. program in the spring of 2011. The department offered to transform Novak's doctoral studies into a master's degree but stated that if Novak chose accepted this offer, his credits would no longer be available to apply toward a doctorate degree. Novak accepted the department's offer and received a master's degree in May 2011.

Novak speculates that Smith, Mallette and Shrock used the wrong criteria – his PTSD – in evaluating his work, and takes issue with the specific flaws found in his Day 3 submissions. He also believes Smith and Mallette were applying higher standards to him than they did to other students. Novak submits written reports from two other professors opining that the decision to fail Novak was not in good faith, was discriminatory and represented a lack of or poor professional judgment.[4] In addition, Novak believes SIU failed to provide reasonable accommodations for his disability.

Novak believes Smith's animus toward him is evident from the fact that she approved a dissertation using different criteria than she applied to Novak's Day 3 submission and that her advice to him about his Day 3 submission was not specific enough.

Novak believes Mallette's animus toward him is evident from the fact that she recommended he take an introductory course in research methodology even though he had

---

[3] It is not clear whether Novak failed the exam four times or whether one of his attempts was considered a "rewrite" of an earlier exam so he only failed the exam three times. This difference is immaterial to the outcome of the case, and the Court only notes it to explain discrepancies in the evidence.

[4] For reasons discussed below, the Court has not used these reports in its consideration of the motion.

successfully completed an advanced course in the same area, that she refused to post Novak's grade for course he had completed, and that she contacted Novak's psychiatrist to ask whether she had any reason to be afraid of Novak.

He believes Shrock's animus toward him is evidence from the fact that she did not read his first three attempts to pass Day 3 and was therefore not able to give him feedback on the earlier attempts and that she was concerned over her own safety after having an odd interaction with Novak during a private meeting.

Novak filed this suit in January 2012 alleging his termination from the Ph.D. program violated § 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794 (Count I), and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.* (Count II). The defendants ask the Court for summary judgment on the grounds that, irrespective of his disability, Novak was not qualified to continue participating in the Ph.D. program, that the defendants had a legitimate, non-pretextual reason for terminating Novak from the program, that Novak is estopped from arguing (or has waived the issue) by agreeing to apply his credits toward a master's degree instead of a Ph.D., and that no reasonable accommodation Novak requested was denied him. They have also sought to strike the opinions Novak tenders to show Smith's, Mallette's and Shrock's decisions were in bad faith.

In response, Novak suggests there is circumstantial evidence sufficient to show his PTSD motivated the decisions that he failed Day 3 and that he should be terminated from the Ph.D. program. He points to the substantive reasons Smith, Mallette and Shrock gave for his final failing Day 3 submission and asks the Court to find that, in light of the falsity of those reasons, a jury could conclude the real reason was Novak's PTSD. He also identifies other dissertation students without PTSD who were treated differently than he was. He also argues he did not waive

his right to pursue this case by agreeing to accept a master's degree. He does not, however, counter the defendants' showing that SIU provided every accommodation Novak requested for his PTSD.

### III. Objection to Magistrate Judge's Order

Because it impacts the evidence the Court considers in ruling on the defendants' summary judgment motion, the Court first addresses Novak's objection (Doc. 64) to Magistrate Judge Frazier's April 15, 2014, order (Doc. 61) granting SIU's motion to exclude (Doc. 32) expert evidence from two professors – Kevin Wise and Jerry Becker – on the grounds that the experts were disclosed too late and that their disclosures fail to comply with Federal Rule of Civil Procedure 26(a)(2)(B). The tendered experts opined that the decisions of Smith, Mallette and Shrock to give Novak a failing mark on his final Day 3 attempt was not in good faith, was discriminatory and represented a lack of or poor professional judgment. Novak disclosed the experts on December 16, 2013, more than a year after the October 1, 2012, expert disclosure deadline set forth in the Court's scheduling order and on the final day of discovery (Docs. 16 & 29). Those disclosures did not contain all the elements required in a retained expert disclosure under Rule 26(a)(2)(B).

A district court reviewing a magistrate judge's decision on nondispositive issues should modify or set aside that decision if it is clearly erroneous or contrary to law. See Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). The Court may also *sua sponte* reconsider any matter determined by a magistrate judge. L.R. 73.1(a); *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 760 (7th Cir. 2009). The Court has reviewed the relevant filings in the record and for the following reasons will affirm Magistrate Judge Frazier's ruling.

As a preliminary matter, Novak does not challenge Magistrate Judge Frazier's decision

regarding compliance with Rule 12(a)(2)(B) and the consequences of that failure to comply. Thus, even if his other objections had merit, the exclusion of Wise and Becker's evidence would still be justified. Indeed, Magistrate Judge Frazier was correct as to that conclusion. Rule 26(a)(2)(B) requires that a retained expert disclosure be accompanied by a written report that contains:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the facts or data considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>
> (vi) a statement of the compensation to be paid for the study and testimony in the case;

and the report must be signed by the witness. If evidence is not disclosed in compliance with Rule 26(a)(2)(B), it must be excluded unless it was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1).

Novak's December 2013 disclosures of Wise and Becker failed to contain items (i) and (iii)-(vi) in Rule 26(a)(2)(B) and were not signed by the witnesses. It appears that details about Wise's and Becker's opinions and qualifications were not revealed to the defendants until after the discovery deadline had passed and, with respect to Becker, not until Novak's February 14, 2014, response to the defendants' motion for summary judgment (Doc. 49). Novak has known about these witnesses since he listed them as potential experts in his May 2012 interrogatory responses and has had the defendants' relevant documents for the experts to review since January 2013 when

they were produced in discovery. Thus, he could have disclosed the experts, along with satisfactory reports based on the written discovery, much earlier. By the time Novak disclosed the witnesses, discovery had closed and trial was imminent, so the defendants had no opportunity to depose Wise or Becker, to challenge their testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny, or to identify opposing experts. Thus, the failure to comply with Rule 26(a)(2)(B) was not substantially justified or harmless.

Novak further believes Magistrate Judge Frazier was wrong that his disclosures were late. He argues that the October 1, 2012, expert witness disclosure deadline was invalid because discovery was ongoing, the individual defendants had not been deposed until late in the discovery period, and because Magistrate Judge Frazier ordered the parties to agree to new deadlines. However, the bottom line is that Magistrate Judge Frazier ordered the October 1, 2012, deadline, and the parties never agreed to or asked for an extension of that deadline. If the deadline was inappropriate in Novak's judgment, it was incumbent on him to ask for an extension. He failed to do this, so he is stuck with that deadline.

For these reasons, the Court finds that Magistrate Judge Frazier's April 15, 2014, order (Doc. 61) was not clearly erroneous or contrary to law, and the Court declines to reconsider that order. The Court will not consider the reports attached to the affidavits of Wise and Becker that are offered in opposition to the defendants' motion for summary judgment.

Because the Court was able to come to this conclusion without reaching the question of whether the proffered evidence was relevant and otherwise admissible, the additional authority with which the defendants seek to supplement the record – *Goswami v. DePaul University*, No. 12 C 7167, 2014 WL 1347112 (N.D. Ill. Apr. 4, 2014) – is not needed by or helpful to the Court. Accordingly, the Court will deny the motion for leave to supplement (Doc. 66).

**IV.     Summary Judgment Analysis**

      A.     <u>Disparate Treatment on the Basis of Disability</u>

Novak's claims are under the RA and the ADA, which share many relevant elements. Section 504 of the Rehabilitation Act prohibits federal grant recipients from discriminating against a disabled individual solely on the basis of the disability. *Mallett v. Wisconsin Div. of Voc. Rehab.*, 130 F.3d 1245, 1257 (7th Cir. 1997). The act states, in pertinent part, "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a). To succeed on a Rehabilitation Act disparate treatment claim, a plaintiff must prove four elements: (1) he is disabled, (2) he is otherwise qualified for participation in the program, (3) the program received federal financial assistance, and (4) he was excluded from participation in the program solely because of his disability. *Rothman v. Emory Univ.*, 123 F.3d 446, 452 (7th Cir. 1997).

Similarly, Title II of the ADA prohibits governmental entities operating public services from discriminating against a disabled individual because of his disability. It provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Accordingly, to succeed on a Title II disparate treatment claim, a plaintiff must prove: "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits or discrimination was by reason of his

11

disability." *See Toledo v. Sanchez*, 454 F.3d 24, 31 (1st Cir. 2006). To establish the third element, the plaintiff must show his disability was the "but-for cause" of the exclusion, that is, that the defendant would not have excluded him had he not been disabled. *See Fleishman v. Continental Cas. Co.*, 698 F.3d 598, 604 (7th Cir. 2012); *Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 961-62 (7th Cir. 2010) (interpreting "because of" as used in Title I of the ADA to mean "but-for cause") (citing *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 176 (2009) (equating "because of" with "by reason of")).[5]

Methods of proof at the summary judgment stage developed in connection with Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. also apply to § 504 RA and Title II ADA cases. *Rothman*, 123 F.3d at 451. Thus, to withstand a motion for summary judgment, a plaintiff may present direct proof of discrimination through direct or circumstantial evidence. *Walker v. Glickman*, 241 F.3d 884, 888 (7th Cir. 2001); *Debs v. Northeastern Ill. Univ.*, 153 F.3d 390, 395 (7th Cir. 1998). Direct evidence is an acknowledgement of discriminatory intent, which is extremely rare. *Rothman*, 123 F.3d 451. In the absence of direct evidence, a plaintiff may also withstand summary judgment by "constructing a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker." *Phelan v. Cook Cnty.*, 463 F.3d 773, 779 (7th Cir. 2006) (internal quotations omitted). A plaintiff may also proceed using the indirect, burden shifting mechanism outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Rothman*, 123 F.3d at 451.

As a preliminary matter, no party disagrees that Novak has a disability (PTSD), that he was excluded from the Ph.D. program in the Department of Curriculum and Instruction at SIU, and that SIU receives federal funds to subject it to the § 504 of RA. The parties disagree, however, about

---

[5] The parties take the position that the "substantial or motivating factor" standard applies. That more lenient standard would not change the result in this case.

whether Novak was qualified for the Ph.D. program and whether his exclusion was because of his disability.

1. Direct Method Using Circumstantial Evidence

It appears Novak may be implying by his recitation of various more or less relevant facts that circumstantial evidence creates a "convincing mosaic" of discrimination on the basis of disability. To the extent he advances this argument, he has not explained how the circumstantial evidence supports it. There is evidence that some faculty at SIU were mildly or more seriously disturbed by some of their contacts with Novak or that they may have been unfair to him on occasion, but that evidence is not tied to his PTSD or the defendants' decisions to give him a failing mark. On the contrary, the evidence shows the defendants provided every reasonable accommodation requested by Novak or his psychologist, bent over backward to give him opportunities and assistance beyond those required by department policy to pass his Prelims, and gave him failing marks based on the content and substance of his exam responses. Novak has simply not created a "convincing mosaic" of evidence from which a reasonable jury could find Smith, Mallette or Shrock in any way used Novak's PTSD as a reason for giving him a failing mark, much less that his PTSD was the sole cause or the but-for cause of their decisions.[6]

2. Indirect Method Using Burden-Shifting Mechanism

Novak is also unable to withstand summary judgment based on the indirect, burden-shifting mechanism of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). In a case like Novak's, under the burden-shifting approach, a plaintiff must first establish a *prima facie* case of discrimination by presenting evidence that (1) he is disabled, (2) he was qualified for

---

[6] Even if the Court had considered the excluded expert evidence, that evidence would establish, at the most, that Smith, Mallette and Shrock were not fair to Novak and wanted him to fail his Prelims. It would not, however, establish that his PTSD was the reason for their actions, which is one of the things Novak would have to prove to succeed on his discrimination claims.

participation in the program, (3) he suffered an adverse action, and (4) non-disabled students were treated more favorably. *See Rothman v. Emory Univ.*, 123 F.3d 446, 451 (7th Cir. 1997). For an RA claim, the plaintiff must also present evidence of federal funding. A plaintiff's successful demonstration of each of these elements creates a rebuttable presumption of discrimination. *Grayson v. City of Chi.*, 317 F.3d 745, 748 (7th Cir. 2003). The burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its action. *Rothman*, 123 F.3d at 451. If the defendant is able to provide evidence of such a reason, the burden shifts back to the plaintiff to show that the articulated reason is actually a pretext. *Id.*

Again, the defendants do not contest the first or third elements of the *prima facie* case – Novak is disabled and was terminated from the Ph.D. program – or the federal funding. The disagreement comes at the second and fourth elements – whether he was qualified and whether non-disabled students were treated better than he was.

          a.     Qualified Individual

Under Title II of the ADA, a disabled individual is "qualified" if, "with or without reasonable modifications to rules, policies, or practices . . . , or the provision of auxiliary aids and services, [he] meets the essential eligibility requirements for . . . participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). The RA uses essentially the same definition. *See Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004); *see, e.g., Halpern v. Wake Forest Univ. Hlth. Scis.*, 669 F.3d 454, 461-62 (4th Cir. 2012); *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498-99 (4th Cir. 2005). To be qualified for an academic program, a plaintiff must be able to show he could satisfy the essential eligibility requirements of the program with or without reasonable accommodations. *Halpern*, 669 F.3d at 462.

The defendants claim Novak was not qualified for the Ph.D. program because he failed to pass his Prelims, a prerequisite for participation in the program, even after having been given all the reasonable accommodations he or his psychologist requested. He failed because Smith, Mallette and Shrock, three members of his dissertation committee, judged him not qualified to continue with the program. They based those judgments, as articulated in their written memoranda at the time of their decisions and at their depositions in this case, upon the content and substance of Novak's written exam responses. While they did not all describe the same reasons, all of the reasons were based on the quality of various aspects of Novak's written product. Novak asks the Court to dissect those reasons and find that they were disingenuous.

Novak runs headlong into the Supreme Court teaching in *Regents of University of Michigan v. Ewing*, 474 U.S. 214 (1985), in the due process context. That case made it crystal clear that courts should be loathe to interfere with the academic judgment of teaching professionals about who is qualified to participate in academic programs. There, a committee decided to drop a student from an academic program where he had been only marginally successful in the program in the past and had failed a required test without being given an opportunity to retake it. *Id.* at 216-218. The Court declined to overturn the university's decision "made conscientiously and with careful deliberation." *Id.* at 225. It stated:

> When judges are asked to review the substance of a genuinely academic decision, such as this one, they should show great respect for the faculty's professional judgment. [FN 11 "University faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation." *Board of Curators, Univ. of Mo. v. Horowitz,* 435 U.S. 78, 96, n.6 (1978) (POWELL, J., concurring). . . .] Plainly, they may not override it unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment.

*Id.* at 225-26. Academic decisions, the Court noted, "require 'an expert evaluation of cumulative information and [are] not readily adapted to the procedural tools of judicial or administrative decisionmaking.'" *Id.* at 226 (quoting *Horowitz,* 435 U.S. at 89-90). Nevertheless, courts must be careful to ensure that academic requirements are not mere disguises for discrimination. *Halpern*, 669 F.3d at 463.

Several courts have applied this deference to academic judgments in disability discrimination cases involving acceptance into or continuation in a degree program. *See, e.g., id.* (collecting cases); *Anderson v. University of Wisc.*, 841 F.2d 737, 741 (7th Cir. 1988) (noting, in context of denial of readmission to law school of student disabled by alcoholism, "The Supreme Court has repeatedly admonished courts to respect the academic judgment of university faculties.").

Here, there is no evidence from which a reasonable jury could conclude that Novak was qualified to continue in the Curriculum and Instruction Ph.D. program. First, there is no indication that passage of Prelims is not a legitimate and essential requirement of the Ph.D. program or that such a requirement weeds out disabled students. Nor is there evidence that the departmental rule allowing exclusion from the program after two failures of any component of Prelims is not legitimate or essential to the Ph.D. program. Furthermore, this Court is in no position to determine whether Novak's Day 3 exam responses were sufficient to pass Day 3 of Prelims. The Court has no expertise in the field of education and certainly could not make better judgments than professors who specialize in that field. Thus, it is inclined to defer to the judgments of Smith, Mallette and Shrock that Novak's responses were inadequate despite his being given all the reasonable accommodations he or his psychologist requested. They justified their judgments by reference to the substance and content of Novak's work, and no evidence

suggests those judgments were substantial departures from accepted academic norms such that they must not have been the product of professional judgment.[7]

For these reasons, the Court believes no reasonable jury could find Novak qualified to continue participation in the Curriculum and Instruction Ph.D. program.

### b. Treatment of Non-Disabled Students

There is no evidence from which a reasonable jury could conclude that non-disabled students were treated more favorably than Novak. Novak points to several students who had already passed the Prelims and had gone on to write dissertations and who had some of the same types of mistakes in their dissertations that Smith, Mallette and Shrock criticized in Novak's Day 3 responses. Again, this is a back-door attack on the academic judgments of Smith, Mallette and Shrock by comparing them to other academic judgments made by different dissertation committees at different times and in different contexts. As explained above, the Court will not review the exercise of academic judgment that led to Novak's failure of Day 3 of his Prelims. Given those judgments, Novak has not pointed to any other non-disabled student who failed Prelims but who was allowed to continue in the Curriculum and Instruction Ph.D. program. There is simply no evidence from which a reasonable jury could conclude that the defendants treated any non-disabled student better than it treated Novak.

For these reasons, the Court finds Novak has failed to establish a *prima facie* case of discrimination under the *McDonnell Douglas* burden shifting scheme.

---

[7] The Court is given brief pause by the fact that Shrock's judgment was based in part on Novak's failure to include in Chapter 2 of his Day 3 response elements that she did not know he had already successfully included in Chapter 1. That pause is brief, however, because her error was a mistake in judgment, not an absence of judgment. Even a mistake in judgment is a judgment not to be second-guessed by a court without good reason.

c.     Pretext

Even if Novak had been able to establish a *prima facie* case, SIU has articulated a legitimate, non-discriminatory reason for his termination from the program – his failure to pass a necessary exam.   This raises the question of whether the reasons offered by Smith, Mallette and Shrock were a pretext for discrimination.

At the pretext stage, the question is not whether the defendants' proffered reason is correct or wise but whether it is the true and genuine reason for the defendants' action rather than a pretext for a decision based on some other, undisclosed reason.   *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 417 (7th Cir. 2006).   The plaintiff must provide evidence that the defendants' stated reason for the adverse action is dishonest *and* that the true reason for the action was discriminatory.   *McGowan v. Deere & Co.*, 581 F.3d 575, 581 (7th Cir. 2009); *Hobbs v. City of Chi.*, 573 F.3d 454, 462 (7th Cir. 2009); *Perez v. Illinois*, 488 F.3d 773, 777 (7th Cir. 2007).   "[H]e ultimately must be able to point to some circumstances from which an inference can be drawn that the real reason for the employment action was discriminatory."   *McGowan*, 581 F.3d at 581; *Perez*, 488 F.3d at 778.   If the proffered reason is the true reason for the defendants' decision, the defendants are entitled to summary judgment.   *Forrester*, 453 F.3d at 417.   If the proffered reason is not the true reason, and if the evidence used to establish the plaintiff's *prima facie* case combined with evidence of the defendants' dishonesty in the proffered reason is sufficient to create an inference of discriminatory intent, the case must be decided by a jury.   *See Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 146-49 (2000); *McGowan*, 581 F.3d at 582.

Novak argues that his dissertation committee's decision that he failed Day 3 of Prelims was an error and that the reasons offered for that failure were a cover-up for discrimination.   However,

without second-guessing the academic judgments of Smith, Mallette and Shrock, there is no evidence that the reasons they offered for failing Novak were not their true reasons, that is, that they were lies. Furthermore, as noted in the prior discussion of Novak's attempt to invoke the direct method of proof using circumstantial evidence, there is no evidence to support the inference that the real reason for the defendants' actions was in any way because of Novak's PTSD. Thus, there is no evidence that SIU's legitimate, non-discriminatory reason for terminating Novak from the Ph.D. program was a pretext for discrimination.

For these reasons, the defendants are entitled to summary judgment on Novak's disparate treatment discrimination claim.

B.  Failure to Accommodate

The prohibition on discrimination in the RA and the ADA includes a requirement to provide reasonable accommodations to a disabled individual to permit access to the program in question. *Washington v. Indiana High Sch. Athletic Ass'n,* 181 F.3d 840, 847-48 (7th Cir.1999). In this case, Novak pled in his Amended Complaint that the defendants failed to provide him reasonable accommodations to permit him access to the Curriculum and Instruction Ph.D. program, specifically, allowing him to retake tests, explaining the basis for his test results, extra time to complete assignments, and access to a tutor in preparation for Prelims. Am. Compl. ¶ 30.

No evidence suggests the defendants failed to reasonably accommodate Novak's PTSD. The defendants have provided evidence that they did, in fact, provide all the reasonable accommodations Novak or his psychologist requested, including the specific accommodations listed in the Amended Complaint. Novak does not address this contention in his response to the motion for summary judgment. Pursuant to Local Rule 7.1(c), the Court construes this as an admission of the merits of the defendants' arguments. Even if Novak's failure to respond were

not considered an admission, no reasonable jury could find from the evidence in the record that the defendants failed to provide any requested reasonable accommodation to Novak. Accordingly, the defendants are entitled to summary judgment on Novak's failure to accommodate claim.

Because there is no evidence from which a reasonable jury could conclude that the defendants discriminated against Novak in violation of § 504 of the RA or Title II of the ADA, the defendants are entitled to summary judgment on all of Novak's claims. In light of this ruling, the Court need not address the defendants' estoppel/waiver argument.

**V.     Conclusion**

For the foregoing reasons, the Court:

- **OVERRULES** Novak's objection (Doc. 64) to the decision of Magistrate Judge Frazier to bar expert reports (Doc. 61);

- **AFFIRMS** the decision of Magistrate Judge Frazier to bar expert reports (Doc. 61);

- **DENIES as moot** the defendants' motion for leave to supplement (Doc. 66);

- **GRANTS** the defendants' motion for summary judgment (Doc. 30); and

- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:   July 2, 2014**

                                         s/J. Phil Gilbert
                                         **J. PHIL GILBERT**
                                         **DISTRICT JUDGE**